IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| v. | § | CRIMINAL NO. H-07-0351-04 |
| | § | |
| DEANDREA S. WADE | § | (Civil Action No. H-10-3973) |
| | § | |

## MEMORANDUM AND ORDER

Pending before the Court is a motion filed by the defendant, Deandrea S. Wade, to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255 [Doc. # 346]. The government has answered with a motion to dismiss [Doc. # 365]. Wade has not filed a reply and the time to do so has expired. The Court has carefully reviewed all pertinent matters in this criminal case. Based upon this review, the Court's clear recollection of the relevant proceedings, and application of governing legal authorities, the Court **denies** the defendant's motion and **dismisses** the corresponding civil action (No. H-10-3973) for reasons set forth below.

### I.   BACKGROUND

A federal grand jury in this district returned an indictment against Theresa Williams, Eric Amoako, Dianne Winzer, and Deandrea Wade, alleging conspiracy to commit mail fraud (count 1) and conspiracy to commit money laundering (count 2). The indictment also included several substantive counts of mail fraud (counts 3 through 20). As outlined in the indictment, the charges stemmed from a scheme to defraud The Hartford Insurance Company ("Hartford") of insurance proceeds for false "workers compensation claims."

The evidence presented at trial is summarized at length in the government's motion and will not be repeated here. It is sufficient to note that Williams, who owned more than one accident injury rehabilitation clinic in Houston, Texas, devised a scheme to commit fraud with Sandra Washington Johnson, who worked as a claims adjuster in Hartford's local Worker's Compensation Claim Center. Both Williams and Johnson, who was indicted in a separate case,[1] pleaded guilty to the charges against them. In addition, both Williams and Johnson testified at a joint trial against the remaining co-defendants. Johnson testified that, under the guise of authorizing legitimate insurance claims, she caused Hartford to issue a total of 188 checks for services that were not rendered. The checks were sent to Williams's boyfriend (Amoako) and to Williams's friend (Winzer), who also owned a rehabilitation clinic, among other things. Winzer's daughter (Wade), who worked as Winzer's office manager, also participated in the conspiracy and received some of the checks. The co-conspirators split the proceeds, which amounted to approximately $1,717,000.00, and sent kickbacks to Johnson.

After hearing all of the evidence, a jury found Amoako, Winzer, and Wade guilty of selected counts alleged in the indictment. The jury found Wade, in particular, guilty of counts 1, 2, 16, and 17.[2] Wade was sentenced to 21 months in prison.[3] All of the defendants

---

[1]   *United States v. Johnson*, Crim. No. H-07-0262 (S.D. Tex.).

[2]   The jury found Amoako guilty as charged in counts 1, 2, 5, 7, and 19 of the indictment. The jury also found Winzer guilty of counts 2, 4, 6, 9-11, 14, 16, and 17 of the indictment.

[3]   Sandra Johnson was convicted pursuant to her guilty plea and sentenced to 12 months in
(continued...)

were ordered to pay restitution to Hartford. The convictions were upheld in a consolidated appeal. *See United States v. Wade,* 356 F. App'x 704 (5th Cir. Dec. 17, 2009) (per curiam) (unpublished).

Wade now seeks relief from her conviction and sentence under 28 U.S.C. § 2255. In her pending motion and supporting memorandum, Wade contends that she is entitled to relief on the grounds that she was denied effective assistance of counsel at trial. [Docs. # 346, # 362]. The government argues that Wade's claims are without merit. The parties' contentions are discussed further below under the governing standard of review.

## II.  STANDARD OF REVIEW

To obtain collateral relief under 28 U.S.C. § 2255, a defendant "must clear a significantly higher hurdle" than the standard that would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982). "Following a conviction and exhaustion or waiver of the right to direct appeal, [courts] presume a defendant stands fairly and finally convicted." *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998). "As a result, review of convictions under [§] 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice." *Frady*, 456 U.S. at 166. Of course, this procedural bar does not apply to claims that could not have been raised on direct appeal, such as those for ineffective

---

[3]  (...continued)
prison. Williams, who also pleaded guilty, received a sentence of 33 months in prison. Winzer was sentenced to serve 41 months in prison. Amoako received a sentence of 18 months in prison.

assistance of counsel, "since no opportunity existed [before the district court] to develop the record on the merits of the allegations." *United States v. Higdon*, 832 F.2d 312, 313-14 (5th Cir. 1987); *see also Massaro v. United States*, 538 U.S. 500 (2003).

Wade proceeds *pro se* in this matter. "'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519, 521 (1972); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999). Thus, *pro se* pleadings are entitled to a liberal construction that includes all reasonable inferences which can be drawn from them. *See Haines*, 404 U.S. at 521; *see also United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997). Nevertheless, *pro se* litigants are still required to provide sufficient facts in support of their claims. *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993). Even under the rule of liberal construction, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *Id.* (citing *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)); *see also Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value.").

### III.   **INEFFECTIVE ASSISTANCE OF COUNSEL**

Wade maintains that she is entitled to relief from her conviction and sentence because she was denied effective assistance of counsel at trial [Docs. # 346, # 362]. Specifically,

Wade complains that her trial attorney was ineffective because: (1) he had a conflict of interest; (2) he failed to investigate and pursue a valid line of defense; and (3) he failed to seek a severance from the other defendants. These allegations are addressed in turn under the legal standard that governs ineffective-assistance claims.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to have the assistance of counsel at trial. *See* U.S. CONST. amend. VI; *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). The right to counsel guaranteed by the Sixth Amendment includes "the right to the *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (emphasis added). Claims for ineffective assistance of counsel are analyzed under the following two-prong standard:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail under this standard, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency. *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000).

The first prong of the governing standard is only satisfied where the defendant shows that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687. Scrutiny of counsel's performance must be "highly deferential,"

and a reviewing court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. To prove prejudice, a defendant must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Wade does not satisfy either prong of the *Strickland* standard for reasons set forth below.

### A. The Claims Concerning a Conflict of Interest with Counsel

Wade, who was represented at trial by local criminal defense attorney Nathan Mays, complains that her counsel's performance was hampered by his association with the defense attorney who represented her mother, Dianne Winzer. The record shows that Winzer was represented at trial by Charles Flood. Wade alleges that, because Mays and Flood were "partners" employed by the same law firm, the simultaneous representation of both co-defendants posed a conflict of interest at trial.

The Sixth Amendment right to counsel includes the right to counsel who is free from a conflict of interest. *See United States v. Garcia-Jasso*, 472 F.3d 239, 243 (5th Cir. 2006). To establish a Sixth Amendment violation on the basis of a conflict of interest the defendant must demonstrate that his counsel acted under the influence of an actual conflict. *See United States v. Culverhouse*, 507 F.3d 888, 892 (5th Cir. 2007). An actual conflict is one that places defense counsel in a position of divided loyalty such that it "adversely affects counsel's performance." *United States v. Infante*, 404 F.3d 376, 392 (5th Cir. 2005). For

purposes of an ineffective-assistance inquiry, prejudice is presumed once a defendant establishes (1) that counsel acted under the influence of the conflict, and (2) that counsel's actions had an adverse effect upon his defense. *See Culverhouse*, 507 F.3d at 892. An adverse effect is established with evidence that presents a plausible defense strategy or tactic that could have been pursued but for the actual conflict. *See Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000).

As the government notes, there is no evidence that Mays and Flood were associated or that they were partners at any time relevant to her criminal proceedings. The record confirms that, before and during the trial, both Mays and Flood had different office addresses and telephone numbers [Docs. # 307, # 308]. Wade does not allege or show otherwise and she does not establish a valid basis for the alleged conflict.

Even assuming that Mays and Flood were partners, the Supreme Court has held that their representation of co-defendants does not automatically violate the constitutional guarantee of conflict-free counsel:

> . . Assuming without deciding that two law partners are considered as one attorney, it is settled that "[r]equiring or permitting a single attorney to represent codefendants, often referred to as joint representation, is not per se violative of constitutional guarantees of effective assistance of counsel." *Holloway v. Arkansas*, 435 U.S. 475, 482, 98 S. Ct. 1173, 1178, 55 L.Ed.2d 426 (1978). We have never held that the possibility of prejudice that "inheres in almost every instance of multiple representation" justifies the adoption of an inflexible rule that would presume prejudice in all such cases. *See Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S. Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). Instead, we presume prejudice "only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Strickland*, 466 U.S., at 692, 104 S.Ct., at 2067 (citation omitted). *See also Cuyler*, 446 U.S., at 348,

350, 100 S.Ct., at 1719.

*Burger v. Kemp*, 483 U.S. 776, 783 (1987). Thus, the burden is on Wade to show that an actual conflict was caused by the alleged joint representation (by Mays and Flood) of multiple co-defendants such that "there was some plausible alternative defense strategy that could have been pursued, but was not, because of the actual conflict." *Infante*, 404 F.3d at 393. Wade, who provides only conclusory allegations in support of her claim, falls far short of meeting this burden. In that respect, a conclusory allegation is insufficient to demonstrate an actual conflict or to obtain relief from a conviction. *See Perillo*, 205 F.3d at 781. Wade's bare allegations establish neither an actual conflict of interest or the existence of a plausible defensive strategy that could have been, but was not, pursued as the result of her attorney's purported partnership with a co-defendant's counsel. Because Wade has failed to demonstrate deficient performance or actual prejudice as the result of an actual conflict of interest, she is not entitled to relief on this issue.

### B. Failure to Investigate

Wade complains that her trial attorney was deficient for failing to investigate Theresa Williams and Sandra Johnson, who testified on behalf of the government. A defendant who alleges a failure to investigate on the part of his counsel must state with specificity what the investigation would have revealed and how it would have benefitted his defense. *See United States v. Glinsey*, 209 F.3d 386, 393 (5th Cir.) (citing *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)); *Creel v. Johnson*, 162 F.3d 385, 396 (5th Cir. 1998); *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998). Wade claims that, as a result of her counsel's

inadequate investigation, he failed to properly present evidence showing that both women were mentally unstable.

In support of her claim, Wade maintains that her counsel should have presented testimony from two mental health experts (identified as "Dr. Drake and Dr. Davis") regarding the stability of Williams and Johnson. To demonstrate the required *Strickland* prejudice on a claim of ineffective assistance in this context, a movant "must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002). Wade does not present a statement from either of the proposed witnesses or any other evidence establishing that Williams or Johnson were mentally ill. Moreover, Wade does not show that either proposed witness would have testified. In other words, to the extent that Wade's ineffective-assistance claim concerns her counsel's failure to present testimony about Williams and Johnson's mental health, Wade fails to show that such testimony would have been admissible if it had been offered.

The government notes, correctly, that Amoako attempted to present testimony from therapist Deborah Drake to show that Johnson, who had been diagnosed with severe depression, was "crazy as a bedbug." Amoako also attempted to present testimony from Dr. Zhao about Williams, who reportedly had been hospitalized and suffered from hallucinations after her son's death. This Court excluded the proposed testimony for several reasons under Rule 403 of the Federal Rules of Evidence. The Fifth Circuit examined this Court's ruling at length and ultimately affirmed the exclusion of the proposed testimony about Williams and

9

Johnson's mental health. *See United States v. Wade*, 356 F. App'x 704, slip op. at 6-11.

Wade fails to show that her counsel was deficient for failing to conduct an adequate investigation or for failing to present testimony from mental health experts about Williams or Johnson. Absent a showing that her counsel was deficient, or that she suffered actual prejudice as a result, Wade does not demonstrate a valid claim for ineffective assistance of counsel in connection with this allegation. Therefore, she is not entitled to relief on this issue.

### C.     Failure to Request a Severance

Wade maintains that the charges against her were improperly joined with those lodged against her co-defendants. [Doc. # 362]. Wade complains, therefore, that her trial attorney was deficient for failing to seek a severance from the other defendants. This claim is without merit. In that respect, the record confirms that Wade's counsel did file a motion to sever her case from the other defendants for purposes of trial. [Doc. # 77]. The Court denied that motion. As discussed briefly below, Wade does not demonstrate that she was entitled to a severance or that the Court's decision was incorrect.

The indictment in this case alleges that Williams, Amoako, Winzer, and Wade conspired to commit mail fraud and money laundering in connection with a scheme to defraud an insurance company by filing false workers compensation claims. "It is the rule, not the exception, 'that persons indicted together should be tried together, especially in conspiracy cases.'" *United States v. Thomas*, 627 F.3d 146, 156 (5th Cir. 2010) (quoting *United States v. Pofahl*, 990 F.2d 1456, 1483 (5th Cir. 1993)). Nevertheless, a party may

request a severance "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government[.]" FED. R. CIV. P. 14(a). "[J]oint defendants face a heavy burden," however, "in demonstrating to a district court that antagonistic defenses warrant granting a severance motion." *Thomas*, 627 F.3 at 156 (quoting *United States v. Daniels*, 281 F.3d 168, 177 (5th Cir. 2002)).

Wade does not show that the charges against her were improperly joined with the ones against her co-defendants. Likewise, Wade does not allege specific facts showing that she was harmed by an antagonistic defense strategy and she does not demonstrate that she was otherwise prejudiced as a result of the joint trial. Nor does she show that her counsel had, but failed to make, a valid argument in support of his request for a severance. Absent a showing that counsel failed to raise a meritorious objection and that the outcome would have been different, Wade fails to demonstrate deficient performance or actual prejudice. *See Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006) (holding that counsel was not deficient in failing to present a meritless argument) (citation omitted); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *Lavernia v. Lynaugh*, 845 F.2d 493, 499 (5th Cir. 1988) ("Counsel cannot be faulted for failing to pursue meritless motions.") (citations omitted); *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) ("Counsel is not required to engage in the filing of futile motions."). Because Wade has failed to establish a valid ineffective-assistance claim, she fails to show that she is entitled to relief under 28 U.S.C.

11

§ 2255 and her motion must be denied.

## IV. CERTIFICATE OF APPEALABILITY

The defendant's post-judgment motion for relief from his conviction and sentence is governed by the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), codified as amended at 28 U.S.C. § 2253. Therefore, a certificate of appealability is required before an appeal may proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see also Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability).

A certificate of appealability will not issue unless the movant makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a movant to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, a movant must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the movant must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring

further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the Court concludes that reasonable jurists would not find the assessment of the constitutional claims debatable or wrong. Because the defendant does not otherwise allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

## V.  CONCLUSION

Because the defendant has failed to establish an error of constitutional or jurisdictional magnitude, she is not entitled to relief under 28 U.S.C. § 2255. Accordingly, the Court **ORDERS** as follows:

1. The government's motion to dismiss [Doc. # 365] is **GRANTED**.

2. The defendant's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 [Doc. # 346] is **DENIED** and the corresponding civil action (H-10-3973) is **DISMISSED** with prejudice.

2. A certificate of appealability is **DENIED**.

The Clerk's Office will provide a copy of this order to the parties and will file a copy of this order in the corresponding civil case (Civil Action No. H-10-3973).

SIGNED at Houston, Texas, on June 30, 2011.

_____
Nancy F. Atlas
United States District Judge